NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—March, 1886.

FRAME *v.* WILLETS.

*In the matter of twelve several accountings in the estate of* SAMUEL WILLETS, *deceased.*

Testator, by his will, appointed the executors trustees of twelve several trusts thereby created for the benefit of divers specified persons for life, with respective remainders over. Seven of these were accordingly set up by the executors, who, upon their accounting as such, in 1885, were directed by the decree to pay to themselves, as trustees, moneys requisite to constitute the funds for the remaining trusts. The trustees having presented twelve accounts for separate settlement, it was

objected that they were to be treated as executors, simply, and that all their proceedings might properly have been set forth in a single account and be passed upon by a single decree.—

*Held*, that the several special proceedings were duly instituted, and that a motion for their consolidation should be denied.

*Held*, also, that the accounting parties were entitled to half-commissions upon the capital of the several trusts, for receiving the same from themselves as executors.

Testamentary trustees who have received commissions at the rate of five, and two and one half, per cent. on a fund of $10,000 or upwards, are nevertheless thereafter entitled to annual commissions, at the full rate, upon the income of each year, unless the will of their testator contains a provision inconsistent with such allowance.

Andrews v. Goodrich, 3 *Dem.*, 245—modified; Matter of Mason, 98 *N. Y.*, 527—followed.

Testator's will established a trust fund for the payment of certain life annuities, providing that, as the annuitants severally died, such portion of the fund as could be spared be divided among his grandchildren living. at the time of such deaths. A codicil revoked all the provisions and bequests given to a grandchild, L., and her issue, *in the residuary clause* of the will.—

*Held*, that L. was, nevertheless, entitled to share in the distribution of the remainders in the annuity fund.

An objection, filed upon an accounting by trustees, to the effect that "the trustees have not accounted for interest on the moneys in their hands," is too indefinite and uncertain to be regarded, and must be amended before it can be pressed.

HEARING of objections to the accounts filed by Robert Willets and others, executors of and trustees under decedent's will, in proceedings for judicial settlement. The facts appear sufficiently in the opinion.

WILSON M. POWELL, *for accounting parties.*

GEORGE H. FORSTER, *for beneficiaries.*

THE SURROGATE.—Shall these twelve accountings be consolidated into one proceeding?

*First.* The testator's will contains, among other provisions, the provisions following:

VOL. IV.—24

1st. It directs the persons named as his executors to hold certain specified stocks belonging to his estate during the lifetime of Sarah A. Willets, the widow of his deceased son Jacob, to apply the dividends arising therefrom to the use of said Sarah for life, and after her death to divide the proceeds of the principal fund among her children.

2nd. It directs the persons so named as executors to hold certain other specified stocks, to apply the income therefrom to the use of Cornelia A. Willets, widow of the testator's deceased son Edward, during her life, and at her death to divide the proceeds of the principal fund among the testator's "grandchildren who shall be living at her death."

3rd. It makes similar provision for the testator's son Robert, so long as he shall live, and for his lawful issue after his decease.

4th. It orders the periodical payment of certain sums to certain specified annuitants during their respective lives, and orders further that an amount sufficient to produce such annuities shall be set apart for that purpose.

5th. It provides that the executors shall divide the sum of $300,000 into four equal shares; that they shall invest each of such shares and apply the income arising therefrom to the following named persons respectively for life: Caroline W. Frame, Edward Willets, Frederick Willets, and Walter R. Willets, children of the testator's deceased son Jacob; and that, on the decease of each of such beneficiaries for life, they shall pay over the principal fund of which he or she shall have theretofore enjoyed the income, " to and among

his or her lawful issue, each child taking one share,"
etc.

6*th*. The residuary estate the testator gave, by his
will, to his executors, in trust for the purposes follow-
ing : To convert the same into cash, to divide the
net proceeds into as many shares as there should be
of his grandchildren at his death, to invest and to
keep invested " all of said shares," to apply the inter-
est, income and dividends of " one of said shares " to
the use of Caroline W. Frame, one of such grandchil-
dren, for her life, and from and after her death to pay
over the principal of that share to her lawful heirs ;
to apply the interest, income and dividends of each of
four others of said shares to each of the four other
grandchildren of the testator for their respective lives,
and as such life beneficiaries should respectively die,
to pay the principal to his or her lawful issue.

One of the five residuary trusts thus created by the
will was subsequently extinguished by a codicil. The
result of this extinguishment is this : That the four
persons interested for life in the four several trusts of
$75,000, are the same persons who are each given a
life interest in one fourth of the residuary estate.
And, moreover, when the respective life interests in
the $75,000 trusts and in the residuary trusts shall be
extinguished, the very persons who will become en-
titled to the principal of the one will also become
entitled to the principal of the other. It seems to me,
therefore, that the trustees might have included in
one proceeding an account of their management of
the residuary trusts, and of the trusts of $75,000, and
thus have compressed eight of these accountings into

four.   But the special guardian of the infant remain-
·dermen objects that, while such a course would occa-
sion additional expense to the infants, it would result
·in no saving, but rather in a  loss to the  beneficiaries
for life ; and that the  accounts should  therefore  be
kept distinct, just as the trustees have chosen to ren-
der them.   I think that his view is correct, and  that
Mr.  Forster's  motion  for  a  consolidation  of  these
twelve  proceedings  into one, or  into any other num-
ber less than twelve, must be denied.   These are my
reasons:

The  accounts which  were  settled  and  determined
by the  decree of  April  29th, 1885,  showed  that  the
·four $75,000 trusts and  the  three specific trusts for
Sarah  A.  Willets,  Cornelia  A.  Willets, and  Robert
Willets,  respectively,  had  been  theretofore  set· up.
That decree provided  that  the  executors, out of  the
assets  in  their  hands, should  pay  to  themselves  as
trustees, the sum of $400,000, the same to be held as
a fund for producing the several annuities provided
·for by the will.   It provided further that the execu-
tors should pay to themselves, as trustees of the resid-
uary  estate, the  balance of  principal  remaining  in
their hands.

Now, when  regard is  had to the  terms of  the will,
to the above cited provisions of the decree heretofore
entered, and to the actual separation of the funds of
these several trusts from all other funds of the estate,
it is impossible to sustain the  contention of  these ob-
jectors that the persons here accounting are  to  be
treated as executors simply, and· that  all  their  pro-
ceedings may properly be  set forth in  a  single ac-

count and settled and determined by a single decree. It was, in my view, the purpose of this testator that, with the exception already noted, each of the various trusts by him created should be separate and distinct from every other, and should, after it had been once established, be managed by its trustees as independently of every other as if such other had never been created, or had been committed to other hands.

Each of the persons interested for life in the several residuary trusts, for example, could have compelled these accounting parties to do the very thing which they in fact have done—that is, to make an utter and absolute separation of the fund applicable to that particular trust from all other funds of the estate. Similarly, any one of the annuitants could have insisted upon the setting apart of a fund sufficient to produce the aggregate annuities, which fund should thenceforth be kept by itself, and be specially devoted to the special purposes of its creation. The mere fact that the testator has designated the same persons whom he has appointed his executors to act also as trustees of each and all the various trusts for which the will provides, does not make the situation practically different from what it would be if he had named A. and B. as executors, C. and D. as trustees of one or more of the trusts, and E. and F. as trustees of others (Hurlburt v. Durant, 88 *N. Y.*, 121; Matter of Roosevelt, 5 *Redf.*, 601; Johnson v. Lawrence, 95 *N. Y.*, 154; Laytin v. Davidson, 95 *id.*, 263; Matter of Mason, 98 *id.*, 527; Phœnix v. Livingston, 101 *id.*, 451).

I have no doubt that one or more of these account-

ing parties might, upon due cause being shown therefor, be removed from his office as trustee of the annuity trusts, for example, without affecting his *status* as executor or as a trustee of other trusts. Nor have I any doubt that, in case a vacancy shall occur in the executorship while a portion of the estate shall be still unadministered, any person who may be appointed administrator with the will annexed will be without authority to perform, as such, any of the duties that now devolve upon these accounting parties as trustees. The case at bar cannot be distinguished in these respects from the cases of Laytin v. Davidson (*supra*), Matter of Mason (*supra*), and Matter of Roosevelt (*supra*).

*Second.* It is a necessary corollary from the above proposition that the accounting parties in these several proceedings are entitled to commissions as trustees in addition to such as have been already allowed them as executors, and this, too, as regards the principal of the several funds now held by them, as well as the income received and paid out. Upon income they are entitled, in each instance, to a commission of five per cent. upon the first thousand, two and one half per cent. upon the next nine thousand, and one per cent. upon the remainder. In Andrews v. Goodrich (3 *Dem.*, 245), the Surrogate of this county held that, where commissions at the rate of five and two and one half per cent. had been received by trustees on the *corpus* of a trust fund of $10,000 or upwards, only one per cent. could be allowed for receiving and paying out income; but the decision of the Court of Appeals, in the Matter of Mason (*supra*), has since

established that, under such circumstances as here appear, trustees are entitled to annual commissions at the full rates upon the income of each year, unless in the will of their testator there is some special provision inconsistent with such allowance. I see no reason why the decree to be entered upon these accountings should not provide for the retention by the accounting parties of one half commissions for receiving the capital of the several trusts (Rowland v. Morgan 3 *Dem.*, 289).

*Third.* For certain sums expended for clerk hire and for taxes upon the whole estate, including the portions carved thereout for the various trust funds, the trustees ask credit in these accounts. These disbursements are charged to the several trusts upon what is claimed to be a *pro rata* basis. I see no objection to the course that has here been pursued, unless the gross payments have been excessive in amounts or the apportionment of the burden has been inequitable. If either of those contentions is made, I must direct a reference.

*Fourth.* By his provision regarding the fund for annuitants, the testator directs that, as these annuitants shall severally die, such portion of that fund as can safely be spared " shall be divided among my grandchildren who shall be living at the time of the death of the respective annuitants."

It is claimed by counsel for the four grandchildren of the testator who are given a life interest in the residuary estate, that his grandchild, Amelia W. Leavitt, is excluded from sharing in this surplus of the annuity fund by the following provision in the codi-

cil: "In consequence of having made large and suf-
ficient provisions, bequests and devises to my grand-
daughter, Amelia W. Leavitt, and her issue, in the
other portions of my will, I hereby annul and revoke
all the provisions and bequests given to her and her
issue *in the residuary clause thereof*, and I hereby
will and direct that my executors divide the residuary
fund therein provided for into as many shares as there
shall be of my grandchildren, exclusive of the said
Amelia W. Leavitt," etc.

Now, the surplus of this annuity fund is no part of
the residue, and no provision for its distribution is
made in the residuary clause.  The will does not de-
clare that, as such surplus shall arise, it shall fall into
the residuum, but expressly directs its division among
all the testator's grandchildren then living.  That
direction stands unrevoked, and Mrs. Leavitt is en-
titled, equally with the other children, to share in
the surplus (Wetmore v. Parker, 7 *Lans.*, 121; affi'd
52 *N. Y.*, 450, 462).  Of course, the same criticism
applies to the principal of the Cornelia A. Willets
trust, which is ordered, by the second article of the
will, to be divided, upon her death, among the testa-
tor's grandchildren who shall be then living.

*Fifth.*  By the decree of April 29th, 1885, the execu-
tors were directed to proceed with the administration
of certain assets still left in their hands.  They were
ordered to retain $110,000, to abide the result of an
appeal to the Court of Appeals respecting the valid-
ity of a provision in the will for the disposition of
$100,000, and to retain $348,000 for the satisfaction
of legacies to certain charitable institutions, which

legacies have not yet fallen due. In the accounts now before the court, no mention is made of the action of the executors with respect to these matters, or with respect to any other matters in the management of which there are still to be exercised executorial functions. The objections to these omissions must be overruled. The accounting parties are not here undertaking to account as executors.

*Sixth.* I have now considered all the objections interposed to these several accounts, except the objection " that the trustees have not accounted for interest on the moneys in their hands." This should be made more definite. It should clearly appear whether it is meant to be claimed that the trustees have actually received interest for which they have not accounted, or that, by the diversion of trust moneys to their own use, or by culpable neglect in making investments, or from some other cause, they have become chargeable with interest as if .they had obtained it. The objection may be amended in this regard, if counsel for the contestants wishes to press it ; if not, and if a reference is not desired upon the question of clerk hire and taxes, a decree may at once be entered in accordance with this decision.